Good morning, your honors. May it please the court, Sean Cabot on behalf of the appellant Linda Green. I know the court is familiar with the facts of the case. As the court is aware, the issue before the court today is whether the district court was correct in granting summary judgment in this age discrimination case. I think there are some facts that are pretty important, and I know the court is familiar with the specific facts of the case, but I do want to highlight a few things. At the time that Ms. Green was terminated, she was 55 and was replaced with a 29-year-old female. Ms. Green had been working since 1999, had made her way up through the ranks as a clerk to an office manager, starting at a rate of approximately $8 an hour to the time that she was terminated, which was $15 and some change an hour. It seemed to me in the briefing of the case and the history of the case that no one questioned that she was a good employee. That's correct. In fact, it seemed like the fire department was sorry to see her go. Well, I don't know. Maybe that's going too far for you. Yeah, I think it is going too far. I mean in terms of she was valued employee. Nope. Well, I mean, I would agree with the court that there's nothing in her personnel file. I just was trying to save you time and maybe our time in saying we get that, that she probably met the prima facie case arguably. So then the problem, as you know, is that there's the stumbling block is that she wasn't able to show that the claim necessity to discharge her was pretextual. Well, here's the issue with that. So we have this job qualification that's set up. And for years it had required three years of clerical experience, one year of clerical experience with the Township of Addison. And that had been the standard for years. There was never any reference to Firefighter 1, Firefighter 2, EMT issues with that job, ever. You think the defendant couldn't have changed the criteria for the job because of economic necessity? Well, I mean, they're arguing, well, yes, the employer can change the requirement. They could just do away with the position, I suppose, right, as long as it's not a pretext. But that's the argument here is that it was pretextual. And the fact that you now require, it's interesting, this case is interesting because Mirowski, the fire chief, required that Ms. Green pass this North Oakland agility test. However, that requirement is not in the qualifications for the job. But you have to go and take this other training, right? In order to do that, you have to be able to pass certain physical. Oh, and I think here's the rub in this case. Because in the qualifications it says, yes, you have to have this Firefighter 1 and 2 EMT stuff. But if you look at even their expert and the testimony and the record, it says that the North Oakland agility test, if it's given, would come after those courses. But isn't the evidence in the record that that was under the prior fire chief? And I was struggling because it seemed to me that everything that was in said it comes after, but that was under the prior fire chief. And the new one is Chief Mirowski, is that correct? Correct. He states that he now requires it before. Was there anyone hired besides this replacement position under which Mirowski exercised his changed requirement? Not that I'm aware of. Was there an opportunity? I'm not even aware of that in the record. Okay. And I think what's important, Your Honor, kind of going with that is the fact that no one has even been required to undergo this North Oakland agility test. I thought the record showed that the only alteration had been in the very position we're talking about. So the only opportunity to exercise this, were it a new policy, is the case before us. Am I wrong on that? Have I missed something? Well, I think kind of the sequence is a little off because there's been testimony in the record that no one has had to complete this North Oakland agility test, that the only one that was required to do it was my client, Ms. Green. And she was the only one hired or whose position was altered under Chief Mirowski? That's my understanding based on the record. Should that be qualified by one more feature? And that is that it seems that he never hired anyone who hadn't already been a fire person. They're either number one or number two or something. But they have, they were, he didn't hire somebody who'd never been in the business or qualified yet. So she was the first non-previously working as a, who worked as a fire person. That may be true, but I think the important and the critical point, and that's why this case is a little bit strange or a little bit out of the ordinary. It gets less strange for you to win. You know what I mean? So it's not a mystery. It can't be a mystery now. No, I understand that, but I think the critical part here is that the evidence is very clear and the record's very clear that to even pass the test, to even learn how to do the test, you have to take these classes. My client was never even afforded the opportunity to take the classes. Morawski essentially is putting the cart before the horse and saying, well, you've got to pass the test and then if you do, then we'll let you take the class. That's not how it goes and everybody testifies. But doesn't he give a business rationale for that? Doesn't he state that it's the expense of the fire department to pay for fire training one and two and in order not to pay for that in a situation in which the person is unlikely to pass, that he then requires this agility test to begin? Tell me why that is a problematic analysis. Well, I think that very analysis makes it implicit that because she's 55, she's not going to be able to pass this agility test. So I think that argument... Does that make it implicit that she couldn't pass the test? Because his argument is, well, why should we spend the money on you, Ms. Green? You're 55 years old. You're probably not going to pass the test anyways. Versus, you know... What if that's a reality test? But what if, you know, the other interesting thing is they never gave the agility test to Angela Haynes and in fact... She'd already passed the test, though, for the qualification, right? Well, she had passed the classes. She's never given the agility test. And in fact, some of the firefighters... She held the certifications, didn't she? She held Firefighter 1 certification, didn't she? Ms. Green? No, the... Ms. Haynes. Yes, she held those certifications, but she never had to do the agility test. And that's the thing. All the firefighters testified that they've never had to do the agility test. In fact, some of them in the record even testified, geez, if I had to do the agility test, I don't even know if I could pass it. But inasmuch as the argument is a business argument about the agility test, this court could accept that, could it not? I don't... And without... I mean, that would foreclose your rationale. I don't think so. And I think the case law is clear that that... As the court describes it, the business decision, or as defense has tried to say at the... It says the chief testified. Well, yeah, the chief did testify, but it's still, if you provide with circumstantial... Summary judgment. Your argument has to be summary judgment was granted in error based on the court buying that testimony, knowing that no one else took it, right? No one else was forced to take the test, and there was a rationale offered for that, that no one had been hired who had never yet been certified as a firefighter. Is that not the ladder you have to climb? I think what the lower court did was put itself in the position of a jury. Okay, that's... And in the recent case from the Supreme Court, the Tolan Cotton case, it provided a very strong admonition to the district court, you can't be doing that. And, in fact, the Peters case, 285 F. 3rd 456, says, if the plaintiff presents a genuine issue of material fact that the proffered reason for the adverse action is not the real reason, she can withstand summary judgment. And here we have the defendants toting the argument, business necessity, business necessity, while all at the same time there's a surplus in the operating budgets. The chief goes out and buys a $31,000 vehicle for his personal use. They buy a new sign for the firehouse. And all these other things are being expended. This is your other strength of your argument here for reversal, is that there was no financial strain on the department. And another is the test. These are the two. And, in fact, the township supervisor testified that he was never shown evidence of this alleged $19,000 savings. It was a sham. And so with that, my time's 25 seconds. I'll save my time for rebuttal. We'll hear from you again. Thank you, Counselor. Good morning, Your Honors. Karen Daly on behalf of the defendants. Was evidence put forth, Ms. Daly, to show that the financial situation was actually not dire? No. In fact, the opposite's true. The record establishes that this was an economic necessity. From 2008… So just the reason I ask the question, is Counsel finished with that point, that there was a fancy truck purchased with the funds that were being saved? So address that, please. Well, that's actually not true. There are two separate millages in the township. One millage is for the fire department expenses. One millage is… Here, let me see. Do they apply differently? Right, right. One is for operations. One's for capital expenditures. Thank you. So you can't mix the two? Correct, correct. So the expenditures for capital things, they come out. That's where the trucks come from and the… And the sign. Whatever, yeah. And the fire truck. Yeah, sure. It's capital expenditures, not personnel. Versus the operations. And the operations is funded by the millage, which is based on property tax value. It's undisputed that the taxable value of homes in Addison Township went down from 2008 to 2010. Why the truck then? Well, that was out of the capital expenditures millage. That was not the property values don't affect that? Correct. It's a different millage. They can't commingle the funds. And the reason that truck was purchased… I was wondering if those taxes didn't also appear lower. To be honest, I don't know. That's not important. It's not. The reason the truck was bought is because… If it's not part of the record, you don't know. His other truck was unrepairable, and he uses it for runs, so it wasn't for personal use. They also bought a $5,000 fire truck because the city of Troy wanted to get rid of it, and they got a steal on it. So they were saving expenses. It's a real small fire department. It's not like the city of Cleveland or something where they have five firefighters in the whole operation. Correct. There's five full-time firefighters right now. They had four, and they needed somebody who could answer the phone plus fight the fires, so they made five. Right, because even though the revenues had gone down for the fire department, there's actually evidence in the record that shows that the calls went up. So the projected number of firefighters needed was five. So that is why the chief decided that he would, instead of eliminating a clerical position, he was one of the only people in the township that had a full-time clerical position. It was kind of a benefit for him to have this full-time. But instead of eliminating it completely, they decided to do a part-time office manager, and then they wanted someone in there that could respond. The question is, who is they? Because in these kinds of cases, much depends on who's making decisions and how the decisions are being made. I've just been kind of walking through the scheduling and the timing because the person who made this decision is Chief Mirowski. Well, he recommended the decision. The fire board and the township board had to approve the decision. Yeah, but I was just working through. There are a few things I don't understand that I would like you to address because I don't see a claim for direct evidence of discrimination here that this is a circumstantial case, and that's why we're in the shifting burdens. But he became fire chief in November of 2009? 2008. Oh, 2008. Thank you. But at some point in early 2010 was when he decided that he needed to reclassify? Correct. The budget had already been done for 2009, so this was for the 2010 budget. Okay, so he begins with the police and fire administrative board meeting and gets approval for the position. Correct. That's like February or early February. And I'm struggling to understand why Miss Green did the agendas for these meetings and he didn't have her name or that position on the agenda that she created. Why was that hidden from her? I don't know that it was hidden from her. I think that it was discussed and until it was approved. Frankly, I don't even think that's in the record. I don't know what his reasoning was for it. She typed the agendas because she was the only clerical staff there. There's a green deposition. She in her deposition says that she was not aware of that. Usually in these kinds of meetings, things have to be on the agenda to be discussed. Right. Well, she talked to the chief about it. The chief talked to her about it when the decision was made that the position would be changed. I guess I'm struggling to understand if this is a pre-scheduled agility test, then he knows at that time that she's got a, what, January or March, one of the dates, twice a year for the agility test and the date is March. I'm struggling a little bit with the fact that he's in February deciding to reclassify. The meeting with the township board was in early March and it was only after that that he told her she was going to have to pass the test that was like two weeks away. Can you explain to me that sequence and how it impacts this case? Well, I don't think it impacts it at all. She was aware two weeks before the test that she would have to take this test. There's testimony in the record that says you can't really train for this type of test. Well, there's testimony in the record that says you can learn techniques because this is a test about techniques, not just a test about brute strength. Sure, and there's also nothing in the record that says she was required to take it that day in March. He's planning to require that the person who holds her position be able to or actually hold a firefighter one or firefighter two designation, then she either does it now or she loses her job. Well, sure, sure, but that's just timing. That's when he was preparing the budget. That's the question. Is this a timing issue that rises to the level of evidence of discriminatory intent or is it not? Absolutely not. There is absolutely no evidence in this case that her age played any role. In fact, the firefighters that were asked to train her, Janine is her first name, she's a year younger than the plaintiff. She was not a 20-year-old firefighter. She's a year younger than the plaintiff. She's one of the ones who testified that technique is trainable. Well, and she tried to help her. She was asked to train her. I don't think this has more to do with the physical capabilities. It has nothing to do with age. In the fire department, they have five full-time. Of those five, four are over the age of 40. They have 25 on-call firefighters. Of those 25, 12 are over the age of 40, and eight of those 12 are over the age of 50. So there's zero evidence in this case that the township or Chief Marowski discriminated against her because of her age. She even testified, there's no animosity. There was no comment ever made about her age. There's nothing in writing about her age. Her age was never even discussed. So there's just no evidence here. So unless the court has any other questions, I would ask that you affirm. I think your argument is primarily that there was no evidence put forth of pretext. Correct. I mean, there's, you know, the record supports their reason, and there's no evidence that that reason was not the given reason. Thank you. Counsel? We'll hear from Mr. Cabot. Judge Stranz, I'll kind of start with you. The statement made by Sister Counsel is kind of interesting. Well, it's just timing. Well, yeah, timing is everything. And I just want to clarify a few things because while Marowski was the Assistant Chief, he didn't become the Fire Chief until November of 2009. So as long as we're talking about timing, let's look a little bit at that. So he becomes the Fire Chief in 2009 of November. In February 2010, not even three months later, he begins this changing of the requirements to add this agility test, which interestingly enough isn't even listed in the classification of the job. And then in March of 2010, we have this special board meeting. In coming up with the, when you say he started this requirement of the agility test, I take it that that's part and parcel with the reorganization of the department. I don't think it has anything to do with the reorganization of the department. Really? Because aren't we talking about a department that needed more firefighters? They had a number of on-call firefighters. But that's more expensive, isn't it? I think what we're struggling with, I agree with you, timing matters. The question is, how can you relate that to your case and show that the timing that mattered from the business standpoint is not a pretext reason for age discrimination? Your argument that he came in and did this quickly is equally an argument because he is in the midst of budgeting. I think the record, doesn't it show that it was that on-call firefighters are more expensive than having someone in the office who does both clerical and firefighting duties? Is that wrong? I don't recall that in the record, but I know in a circumstantial case, which is what we have here, it's like a puzzle. Not a single puzzle piece is going to put forth the whole image. But once you get a bunch of pieces... What carries you over? We have the timing issue. We talked about that. Then we have this mysterious township board meeting where it's not even on the agenda. She types the agenda, it's not on there. Now all of a sudden it appears. Then we have township supervisor testifying that, hey, when Mirowski came to us and told us about this, he didn't even tell us about this agility test. So why is this a secret? Because he wants to keep it a secret. Because he knows that Ms. Green, who is 55 years old, isn't going to be able to pass that test. She wasn't given the opportunity to even take the classes, which everybody said you have to take the class to learn the technique to even pass the test. And I see my time is up. It is. Thank you. Counsel will consider your case carefully, and you will receive an opinion.